Frank V. Rizzo, Appellant, *v.* Commonwealth of Pennsylvania, Civil Service Commission, Appellee, and Commonwealth of Pennsylvania, Milk Marketing Board, Intervening Appellee.

Argued December 5, 1974, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Dennis Revak,* with him *Martin Lubow* and *Rosenberg & Lubow,* for appellant.

*Howard D. Brooks,* Associate Counsel, with him *Walter J. Sullivan,* Chief Counsel, for intervenor.

OPINION BY JUDGE CRUMLISH, JR., February 28, 1975:

Frank V. Rizzo (Rizzo) appeals an adjudication of the State Civil Service Commission which sustained his removal from the position of Milk Marketing Auditor I, effective September 5, 1973, by the Milk Marketing Board, for just cause as required by Section 807 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.807 (Supp. 1974-1975).

Rizzo had been employed by the Milk Marketing Board since November 1959, his most recent position being Milk Marketing Auditor I, regular status. His employment entailed field audits of approximately eight wholesale milk dairies within the Pittsburgh region subject to the jurisdiction of the Milk Marketing Board. On July 18, 1973, Rizzo was dismissed by oral communication from the Chairman of the Milk Marketing Board. His dismissal was confirmed by telegram received July

25, 1973 with an effective date of July 24, 1973. A written confirmation of his removal followed, which contained an explanation of his appeal and hearing rights under the Civil Service Act. Rizzo filed a timely appeal from this personnel action with the Civil Service Commission wherein he alleged that the written notice of removal failed to set forth the reasons for his removal as required by Section 950 of The Civil Service Act, 71 P.S. §741.950 (Supp. 1974-1975). Thereafter, at the suggestion of the Executive Director of the Civil Service Commission, an amended notice of removal was mailed to Rizzo by the Milk Marketing Board on September 5, 1973. This notice contained the following reasons for discharge:

1) his unsatisfactory financial audits in the Erie market during February of 1973 and failure to return to Erie to complete the audits;

2) unsatisfactory audits of Menzie's Dairy in McKeesport, Pennsylvania; and

3) an unauthorized vacation by Rizzo from June 8 to July 17, 1973 while he was assigned to audits in the Pittsburgh area.

On February 6, 1973, after concluding two evidentiary hearings, the Commission found that these charges were supported by the evidence, and affirmed Rizzo's discharge. The effective date of the removal, however, was determined to be September 5, 1973, the date of the amended notice of dismissal. Accordingly, he was granted back pay and benefits from July 24, 1973 to September 5, 1973.[1] Rizzo has appealed these determinations to this Court.

---

1. An amended order was made by the Commission on February 20, 1974, after Rizzo had filed this appeal to this Court, but before the record was certified to this Court, which deducted any earned income, public assistance or unemployment compensation received by Rizzo from July 24, 1973 to September 5, 1973 from the salary and benefits due him during this interim period under

Our review in appeals of this nature is, indeed, limited. As recently expressed by Chief Justice JONES of our Supreme Court: "In reviewing a determination properly within the province of an administrative body, 'judicial discretion may not be substituted for administrative discretion, even if the reviewing court . . . might have reached a different conclusion in regard to action taken by the administrative agency'. . . . Our scope of review under the authority of Section 44 of the Administrative Agency Law is limited to looking to errors of law or abuse of discretion as determinative criteria, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.44. . . . Thus, we must affirm the adjudication of the Commission if a reasonable mind might make the same determination based on the evidence before the Commission." *Williams v. State Civil Service Commission,* 457 Pa. 470, 327 A.2d 70, 71-72 (1974)ᐧ (Emphasis original, citations omitted). It remains, of course, the duty of the Commission to determine the credibility of the witnesses and the value to be given their testimony, and this Court will only examine the evidence to determine whether the Commission's findings are supported by substantial evidence in the record. *Kaplan v. State Civil Service Commission,* 13 Pa. Commonwealth Ct. 29, 317 A. 2d 683

the Commission's February 6, 1973 order. This order would appear to fall within the Commission's discretionary power to award full or partial back pay under Section 951(b) of the Civil Service Act, 71 P.S. §741.951(b) (Supp. 1974-1975), and the set-off would be proper under the rationales of *Lower Merion Township v. Turkelson,* 403 Pa. 72, 169 A.2d 97 (1961); *Vega v. Borough of Burgettstown,* 394 Pa. 406, 147 A. 2d 620 (1958); and *Seltzer v. City of Reading,* 151 Pa. Superior Ct. 226, 30 A. 2d 177 (1943). While as a general rule a lower court, or in this case an administrative tribunal, does not have the power to modify its order once an appeal has been taken, it may correct an inadvertent or erroneous order so long as the record remains in the lower tribunal. *See Diehl v. Keystone Alloys Co.,* 189 Pa. Superior Ct. 149, 149 A. 2d 479 (1959), *rev'd on other grounds,* 398 Pa. 56, 156 A. 2d 818 (1959).

(1974) ; *Ricker v. Civil Service Commission,* 7 Pa. Commonwealth Ct. 329, 300 A. 2d 293 (1973).

Rizzo first argues that the Commission erred in permitting the Milk Marketing Board to cure the admitted notice deficiencies of its July 25, 1973 letter of removal with the amended notice complying with the requirements of Section 950 of the Civil Service Act, 71 P.S. §741.950. Followed to its inexorable conclusion, this reasoning would preclude an appointing authority from *ever* removing a classified employee should its initial attempt at removal subsequently prove defective. Such a result is not supported by the express language or intent of Section 950 and we are cited no authority to support this position. Section 950 provides in relevant part:

"Every person in the classified service shall be furnished with written notice of any personnel action taken with respect to him pursuant to the provisions of this act. Such notice, a copy of which shall be submitted to the commission, shall be furnished within time limits prescribed by the rules of the commission. The notice shall in the case of permanent separation . . . of a regular employe set forth the reason or reasons for the action." 71 P.S. §741.950 (Supp. 1974-1975).

In the case of removal of a regular status employee, regulations of the Commission require advance notice to the affected employee setting forth "a clear and complete statement of the specific reasons" for the removal. 4 Pa. Code. §§105.1-.3. The purpose of these provisions is to satisfy the Due Process requirements of affording an affected employee reasonable notice of the charges against him so that he will have sufficient opportunity to answer the charges and fight his removal. *McClelland v. State Civil Service Commission,* 14 Pa. Commonwealth Ct. 339, 322 A. 2d 133 (1974) ; *see also City of Pittsburgh Civil Service Commission v. Beaver,* 12 Pa. Commonwealth Ct. 353, 315 A. 2d 672 (1974). We find the reasons for removal set forth in the September 5, 1973 letter to be of

sufficient clarity in the context of the nature of Rizzo's employment so as to give him ample opportunity to prepare a defense, as evidenced by his able counsel's vigorous rebuttal of the charges during the hearings before the Commission. We also agree with the Commission's treatment of the deficiencies in the first notice of removal by effectuating the removal from the date of the September 5, 1973 notice, thereby giving Rizzo adequate notice and preserving the authority of the Milk Marketing Board to discharge employees who adversely affect its operations.

Reaching the merits, it is clear that the grounds for removal proffered by the Milk Marketing Board and sustained by the Commission are sufficient to constitute "just cause" under Section 807, 71 P.S. §741.807 (Supp. 1974-1975). Although the concept of "just cause" is not amplified by the Civil Service Act, "[w]e are able to discern that the legislative intent relating to one's relationship with the classified service turns upon a merit concept. This means that any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of such criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability." *Corder v. Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 467, 279 A. 2d 368, 371 (1971). *See also Cotter v. State Civil Service Commission*, 13 Pa. Commonwealth Ct. 49, 318 A. 2d 390 (1974) ; *Kaplan v. State Civil Service Commission, supra.*

The charges against Rizzo which the Commission found to be supported by the evidence, can be essentially reduced to three specific instances reflecting upon his failure to properly execute the duties reasonably expected of him and a continuing lack of cooperation with his employer. In early February of 1973, Rizzo was assigned to prepare a labor costs analysis as part of a

financial audit of Sterling Dairy in Erie, Pennsylvania. His immediate supervisors testified that Rizzo only returned an Internal Revenue Service "Form 941," which is prepared by employers on a quarterly basis to report employee salaries paid and wages withheld for federal income tax purposes. The witnesses for the Milk Marketing Board testified that this form alone would not give a comparative analysis of the labor costs of the dairy for the period involved and was of little value to the audit. The Commission further found that Rizzo submitted inaccurate reports concerning the compliance of Menzie Dairy in McKeesport, Pennsylvania with the uniform system of accounts required to be maintained by reporting dairies. Upon being assigned to Menzie in January of 1973, Rizzo submitted a report stating that "this dealer is in compliance with the uniform system of accounts for 1971 and 1972." Yet, when the dairy was re-audited following Rizzo's removal, it was determined that Menzie was no more than sixty-five percent in compliance for this same period. Of a more serious nature, however, was his admitted failure to submit monthly utilization audits of Menzie until April of 1973, three months after his assignment to the dairy. His first audit, which was only undertaken after a complaint of delinquencies in payments to a producer was reported to the Milk Marketing Board and referred to Rizzo, revealed a delinquency of over $482,000.00. This deficiency exceeded the bond of $200,000.00 posted by Menzie to the Milk Marketing Board, and jeopardized the Board's function of overseeing prompt payments to milk producers. Finally, the Commission found that Rizzo had misrepresented to the director of personnel that his father was critically ill in Florida in order to take an emergency leave at a time when he was aware that all annual vacation leaves had been cancelled. Although Rizzo testified that he thought he was taking an authorized annual leave, the short of it is that Commission specifically disbelieved his explana-

tion, and we will not disturb this determination of credibility.

The findings of the Commission as summarized are supported by substantial evidence, and Rizzo does not seriously argue otherwise. Rather, he contends that much of this evidence is incompetent because it was based upon the testimony of William Bongert, Director of Enforcement of the Milk Marketing Board, who did not reappear at the continued hearing before the Commission and, thus, was not subject to further cross-examination. We agree that any testimony of this witness or any other witness which was not subject to an opportunity for reasonable cross-examination could not be properly considered by the Commission in reaching a decision. *See A. P. Weaver and Sons v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971) ; *Bonser License*, 46 Pa. D. & C. 2d 565 (1969) ; *State Board of Private Business Schools v. Thomasson*, 66 Dauph. 110 (1954). The Commission here, however, ruled that it would only consider Bongert's testimony to the extent that he had been subject to cross-examination, and after a careful review of the record we must conclude that the Commission complied with this limitation in making its findings. Moreover, much of his testimony was corroborated by the testimony of other witnesses who were subject to cross-examination and by the audit reports prepared by Rizzo himself which formed an independent basis for the Commission's findings. Nor can we hold that the Commission erred in failing to draw an adverse inference from the Milk Marketing Board's failure to produce the testimony of John Orzag, Rizzo's immediate supervisor in the Pittsburgh area, absent proof that this witness was peculiarly within the reach and knowledge of the Milk Marketing Board. *See Downey v. Weston*, 451 Pa. 259, 301 A. 2d 635 (1973) ; *Bentivaglio v. Ralston*, 447 Pa. 24, 288 A. 2d 745 (1972).

In conclusion, we find neither an abuse of discretion nor error of law in the Commission's determination that Rizzo was removed for just cause, and so we enter the following

ORDER

AND NOW, February 28, 1975, the order of the Pennsylvania Civil Service Commission is affirmed, and the instant appeal is dismissed.