Joseph DeMarinis, Petitioner *v.* Hazleton Housing Authority, Respondent.

Argued March 9, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Theodore R. Laputka, Jr.,* with him *Theodore R. Laputka,* for petitioner.

*Pasco L. Schiavo,* for respondent.

OPINION BY JUDGE WILKINSON, JR., April 17, 1979:

Petitioner has filed an appeal to this Court from an adjudication and order of the State Civil Service Commission (Commission) sustaining a decision of the Housing Authority of the City of Hazleton (Authority) removing him for cause pursuant to Section 807(a) of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.807(a). We affirm.

By letter dated July 21, 1977, the Authority dismissed petitioner, alleging seven separate grounds for cause which may be briefly summarized as negligence and incompetence in maintaining financial records, unethical conduct in dealing with contractors, lack of capability and insubordination. On appeal, the Commission concluded the Authority had established all seven grounds for dismissal and further that the Authority did not discriminate against petitioner for political reasons.

The principal question presented for review is whether there was sufficient evidence to support the

Commission's conclusion that petitioner was dismissed for cause. Although petitioner has argued there is insufficient evidence to support each of the seven grounds, we will deal only with the evidence concerning maintenance of the Authority's financial records since evidence on this issue alone would establish sufficient grounds for dismissal. *See Harp v. Pennsylvania Liquor Control Board,* 28 Pa. Commonwealth Ct. 318, 368 A.2d 846 (1977). In particular, petitioner contends that the Authority failed to prove that he was responsible for the maintenance of the Authority's financial records.

That the Authority's financial records had not been properly maintained is not in dispute and was fully documented in a report by the Department of Housing and Urban Development (hereafter HUD) which concluded that it (HUD) was unable to perform a routine audit of the Authority's books "because of the incomplete and inaccurate condition of the accounting records, and the grossly inaccurate financial statements." The chairman of the Authority's Board of Directors testified before the Commission that the HUD report, received by the Board one week before petitioner's dismissal, was conducted at the instigation of the Board of Directors after receiving a report from a private accountant hired to assist petitioner in the preparation of financial reports to HUD.

The evidence before the Commission on the issue of accountability for financial recordkeeping within the Authority's governing framework included the testimony of the chairman, which was corroborated by the vice chairman, the Authority's bookkeeper, and petitioner, as well as the bylaws of the Authority and a personnel policy duly adopted by the Authority containing the executive director's job description. The chairman, a member of the Board of Directors since 1971 and chairman since 1976, testified that petitioner

had been in charge of keeping the financial records, specifically supervising the work of the bookkeeper and submitting required financial reports to HUD. The bookkeeper testified that petitioner was her immediate supervisor and that if she needed help in preparing financial records she first sought petitioner's assistance and if he was not able to provide it, assistance from the HUD regional office. Petitioner, who testified he had been an accountant for 25 years before becoming executive director in 1967, disclaimed any responsibility for the financial operation of the Authority and further testified that he did not supervise the work of the bookkeeper. The rub in this neat exposition of testimony is the documents showing the governing framework of the Authority's operation. The bylaws, amended in 1971, provide that the secretary, an appointed member of the Board of Directors, shall maintain the Authority's books and financial records. The personnel policy, adopted by the Board of Directors in 1974, provides job descriptions for an accountant and an executive director; however, no accountant had been on the staff of the Authority during the period in question.

Just cause for dismissal within the meaning of Section 807(a) of the Act, 71 P.S. §741.807(a) has been defined by this Court to include the failure of a civil service employee to properly execute his duties or to act in such a manner which frustrates or hampers the proper execution of those duties. *Rizzo v. Civil Service Commission*, 17 Pa. Commonwealth Ct. 474, 333 A.2d 212 (1975). It is clear that one of petitioner's duties was the submission of proper and accurate reports to HUD. Further, while petitioner stated he did not exercise his supervisory power, the record indicates that petitioner was responsible for the work performance of all the paid members of staff including the bookkeeper. Petitioner's failure in

this regard can only be regarded as a dereliction of his duties given the evidence that he exercised over-all control over the administration and day-to-day management of the Authority's business. His attempt to place this responsibility upon the unpaid secretary of the Board of Directors and the Authority's book-keeper is not supported by anything in the record except his own assertions. Consequently we find adequate evidence in the record to support the Commission's conclusion the petitioner was dismissed for cause.

Petitioner next contends the Commission erred in not dismissing the Authority's case on the ground no prima facie case had been established, or alternatively that he was denied due process in the failure of the Commission to rule on this motion at the conclusion of the Authority's case. There is simply no merit to this argument. The record shows that the Authority had established a prima facie case. Consequently, failure to rule on petitioner's motion was harmless.

Similarly, we find no merit to petitioner's argument that he was denied due process because the majority decision was made by Commissioners who did not preside over all the testimony. This Court has expressly held that where, as here, the adjudication indicates that the Commission read the entire record, due process is satisfied. *Siegel v. Civil Service Commission,* 9 Pa. Commonwealth Ct. 256, 305 A.2d 736 (1973).

Accordingly, we will enter the following

ORDER

AND Now, April 17, 1979, the order of the State Civil Service Commission, Appeal No. 2265, dated May 11, 1978, dismissing the appeal of Joseph De-Marinis, is hereby affirmed.