Leroy McKNIGHT

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, James C. McConnon, Francis P. Desmond, G. Roger Bowers, Philip R. T. Carroll, Harold E. Kohn, Weldon B. Heyburn, Joseph L. Pyle, Jr., Ellen Ann Roberts, Isadore M. Scott, Lawrence R. Stoltz, Joseph Tracey sued Individually and in their official capacities as members of the Transportation Board of the Southeastern Pennsylvania Transportation Authority,

William Eaton, Individually and in his capacity as General Manager of Southeastern Pennsylvania Transportation Authority,

Frank X. Hutchinson, Individually and in his capacity as Director of Industrial Relations of Southeastern Pennsylvania Transportation Authority,

Robert King, Individually and in his capacity as Director of Security of Southeastern Pennsylvania Transportation Authority,

Kevin Duffy, Individually and in his capacity as Manager of Personnel of Southeastern Pennsylvania Transportation Authority.

Civ. A. No. 76–3060.

United States District Court, E. D. Pennsylvania.

Oct. 4, 1977.

Carrie Menkel-Meadow, Penn Legal Assistance, Philadelphia, Pa., for plaintiff.

David F. Girard-diCarlo, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff, Leroy McKnight, has brought this civil rights action to redress an alleged denial of due process of law during his discharge from the Southeastern Pennsylvania Transportation Authority (SEPTA). The action arises under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Fourteenth Amendment to the Constitution. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(3)–(4). The defendants are SEPTA, the eleven individuals who comprise the SEPTA Transportation Board, and SEPTA's General Manager and Chief Executive Officer, William Eaton; Director of Industrial Relations, Frank X. Hutchinson; Director of Security, Robert King; and Personnel Manager, Kevin Duffy.

The complaint alleges: Plaintiff was employed from September 17, 1970 until November 22, 1975 as a special investigator for SEPTA's security division. He was not provided with rules and regulations specifying his duties and responsibilities or stating offenses for which he could be disciplined or discharged. On November 22, 1975, King, the director of security, discharged plaintiff "on the alleged grounds that he [plaintiff] had been intoxicated while at work and that he had failed to perform his designated duties." Plaintiff denied the allegations, offering to take a sobriety test. Defendants refused the offer and would not let plaintiff discuss the discharge with his supervisor. They did not give plaintiff a written statement of the reasons for his discharge or the facts on which it was based and gave him no opportunity to contest the charges made against him. Plaintiff asserts further that at a later unemployment compensation proceeding, defendants arbitrarily changed their reasons for the discharge because of their inability to prove intoxication. As a result of the discharge plaintiff has sustained "loss of reputation in the community and the loss of opportunity for other employment" and "loss of income, economic hardship and emotional distress." He also claims that he lost accumulated vacation pay and retirement fund benefits.

The complaint charges the defendants with denial of procedural and substantive due process and asserts pendent state claims against them for violation of § 25 of the Metropolitan Transportation Authorities Act of 1963 and breach of the employment contract. Plaintiff seeks compensatory damages and costs; a judgment declaring SEPTA's procedures and practices unconstitutional (see Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202); and an order compelling defendants to provide him with a hearing and other procedural rights regarding his discharge, reinstating him to his former position with SEPTA, and granting him back pay, accumulated vacation and retirement benefits, and other equitable relief.

All of the defendants have moved to dismiss all of plaintiff's claims on the grounds of lack of jurisdiction (Fed.R.Civ.P. 12(b)(1)) and failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)).

## I. Civil Rights Claims Against SEPTA

■ SEPTA moves to dismiss the claims against it because it has been excluded from liability under the Civil Rights Act of 1871. That Act only imposes liability on "persons",[1] and it is now firmly established that a state governmental entity such as SEPTA [2] is not a "person" within the meaning of the Act. *See City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda,* 411 U.S. 693, 706–10, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape,* 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *United States ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84, 86 & n. 2 (3d Cir. 1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970). Since SEPTA is not liable under the Act, jurisdiction over claims against SEPTA may not be based on 28 U.S.C. § 1343(3)–(4), a provision limited to claims under the 1871 Act. *See City of Kenosha, supra.*

Plaintiff seeks to assert claims against SEPTA directly under the Fourteenth Amendment, § 1 of which provides:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Jurisdiction for such a claim is based on 28 U.S.C. § 1331, which confers jurisdiction over claims arising under the Constitution if the amount in controversy exceeds $10,-000.[3] *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 277–79, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Gagliardi v. Flint,* 564 F.2d 112, 114–116 (3d Cir. 1977); *Jones v. McElroy,* 429 F.Supp. 848, 855 (E.D.Pa.1977). SEPTA contends that a cause of action may not be brought directly under the Fourteenth Amendment and that, in any event, plaintiff has failed to meet the $10,000 amount in controversy requirement of § 1331.

■ As I explained in a recent opinion, in my view an action for damages against a state governmental entity may not be asserted directly under the Fourteenth Amendment. *See Jones v. McElroy, supra,* at 853–60. This conclusion is based on an analysis of various policy factors and is in accord with what I perceive to be the recent trend among the cases (*see id.* at 856–57 & n. 10).[4] I note, however, that many of the

---

1. The Act, 42 U.S.C. § 1983, provides:

 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. SEPTA was created under the Metropolitan Transportation Authorities Act of 1963, 66 P.S. §§ 2001 *et seq.* Section 4(a) of that Act, 66 P.S. § 2004(a), provides that an authority created under it "shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof." SEPTA is a state governmental entity for purposes of the 1871 Civil Rights Act. *See Nelson v. Southeastern Pennsylvania Transportation Authority,* 420 F.Supp. 1374, 1376 & n. 1, 1379 n. 2 (E.D.Pa.1976).

3. Section 1331(a) provides:

 "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . . ."

4. Among the cases decided after *Jones* which are in accord with this view are *Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977); *Marinari v. Rizzo,* Civil No. 77–104 (E.D.Pa., July 20, 1977) (Hannum, J.); and *Sandoval v. Brown,* 432 F.Supp. 1028 (D.N.M.1977).

 The Third Circuit considered, but did not decide, the issue of municipal liability under the Fourteenth Amendment in two recent cases. *See Gagliardi v. Flint,* 564 F.2d 112 (3d Cir. 1977); *Mahone v. Waddle,* 564 F.2d 1018 (3d Cir. 1977). In *Gagliardi,* the City of Philadelphia was found liable for damages in an action asserted directly under the Fourteenth Amendment and under pendent state law theories. The Court of Appeals held that the district court's exercise of pendent jurisdiction over the state claims against the City was prop-

authorities which have refused to recognize a damage action under the Fourteenth Amendment nevertheless recognize a Fourteenth Amendment action against state governmental entities for declaratory or injunctive relief. *See, e. g., Mahone v. Waddle,* 564 F.2d 1018, 1056–1057 (3d Cir. 1977) (Garth, J., concurring in part and dissenting in part); *Crosley v. Davis,* 426 F.Supp. 389, 396–97 (E.D.Pa.1977) (dictum); *Patterson v. Ramsey,* 413 F.Supp. 523, 528–29 (D.Md.1976), *aff'd per curiam,* 552 F.2d 117 (4th Cir. 1977); *Bennett v. Gravelle,* 323 F.Supp. 203, 216–18 (D.Md.), *aff'd,* 451 F.2d 1011 (4th Cir. 1971), *petition for cert. dismissed,* 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972). *Contra, Pitrone v. Mercadante,* 420 F.Supp. 1384, 1389–90 & nn. 14–15 (E.D.Pa.1976), *appeal pending,* No. 76–2593 (3d Cir.). I did not consider the question of declaratory or injunctive relief in the *Jones* opinion, and, in view of my ultimate disposition of this case, I have no need to consider that issue at this time. For the limited purpose of determining the amount in controversy for § 1331 jurisdiction, however, I shall assume that declaratory and injunctive relief may be obtained against SEPTA in this action.

■ As the Supreme Court stated in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)—

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." (Footnote omitted.)

*Accord, Hunt v. Washington State Apple Advertising Commission,* 432 U.S. ——, ——, 97 S.Ct. 2434, 2443–44, 53 L.Ed.2d 383 (1977); *Mt. Healthy City School District, supra,* 429 U.S. at 276–77, 97 S.Ct. 568. While in an action for damages the jurisdictional amount is determined by the sum of damages claimed, in a civil rights action for equitable relief, "the measure of jurisdiction is the value of the right sought to be protected by injunctive relief." *Spock v. David,* 469 F.2d 1047, 1052 (3d Cir. 1972), *rev'd on other grounds after remand,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). Determination of this value often is

er and that, since the evidence supported the judgment against the City on those claims, there was no need to consider whether the judgment against the City also was proper under the Fourteenth Amendment theory. *See Gagliardi,* 564 F.2d at 114–116. In *Mahone,* the district court dismissed claims asserted against the City of Pittsburgh under the Fourteenth Amendment, the Civil Rights Act of 1866 (42 U.S.C. § 1981), and state law. The Court of Appeals reversed as to the claims under the 1866 Act and held that, since the 1866 Act claims were coextensive with the claims asserted directly under the Fourteenth Amendment, there was no need to recognize municipal liability under the Fourteenth Amendment in that case. *Mahone,* 564 F.2d at 1024–1025. The Court of appeals also directed the district court to reconsider its dismissal of the pendent state claims since these could provide a basis for complete recovery against the City and make resolution of the direct Fourteenth Amendment liability question unnecessary. *Id.* at 1025–1026, 1037.

It is apparent that whether municipalities may be held liable for damages in actions asserted directly under the Fourteenth Amendment is still an open question in this circuit. In both *Gagliardi* and *Mahone,* the Court of Appeals refrained from deciding the issue and confirmed that none of its previous decisions, including the oft-cited opinion in *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3d Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), were dispositive of the matter (*see Gagliardi,* at 115 n. 3; *cf. Mahone,* at 1023–1024 & n. 7). In *Gagliardi,* Judge Gibbons wrote a separate opinion asserting that municipal liability should be recognized. *Gagliardi,* at 117–126. In *Mahone,* Judge Garth wrote a separate opinion asserting that such liability should not be recognized. *Mahone,* at 1052–1061, 1062. At least one other case presenting the issue is currently pending before the Court. *See Pitrone v. Mercadante,* No. 76–2593 (3d Cir., argued Sept. 9, 1977) (on appeal from 420 F.Supp. 1384 (E.D.Pa.1976)). Until there is a definitive ruling to the contrary by the Third Circuit or the Supreme Court, I shall continue to abide by my opinion in *Jones.*

difficult, but assessment can best be made in light of the more general rule that "the jurisdictional amount is to be tested by the value of the object to be gained by complainant." *Glenwood Light and Water Co. v. Mutual Light, Heat and Power Co.,* 239 U.S. 121, 125, 36 S.Ct. 30, 32, 60 L.Ed. 174 (1915); *accord, Hunt, supra,* 432 U.S. at ——, 97 S.Ct. at 2443; *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). *See also Illinois v. City of Milwaukee,* 406 U.S. 91, 98, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); *Ronzio v. Denver & R. G. W. R. R.,* 116 F.2d 604, 606 (10th Cir. 1940). Part of the equitable relief requested by plaintiff in this action is reinstatement to his former position with SEPTA with full back pay plus interest. I cannot say at this stage of the litigation that as a matter of law plaintiff will not be entitled to that relief. Plaintiff has submitted an affidavit stating that his annual salary at the time of his November 22, 1975 discharge was approximately $11,000, and defendants have not contested that assertion. The claim for reinstatement itself has a value in excess of $10,000, therefore, without regard to the other relief plaintiff requests. As a result, the amount in controversy necessary for jurisdiction over plaintiff's claim against SEPTA under 28 U.S.C. § 1331 is present.

## II. *Deprivation of Due Process*

As noted above, § 1 of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." Plaintiff contends that he has been deprived of both procedural and substantive due process rights. Assessment of this claim requires a determination of whether plaintiff has been deprived of life, liberty, or property and, if so, whether the deprivation occurred without constitutionally required procedural safeguards or for reasons which do not comport with the substantive aspects of due process protection. *See, e. g., Ingraham v. Wright,* 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (procedural due process); *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (substantive due process).

## A. *Life, Liberty, or Property*

Plaintiff contends that termination of his employment with SEPTA constitutes a deprivation of property. In addition he asserts that the charge of intoxication affected his reputation in the community, depriving him of liberty.

### 1. *Property*

In *Nelson v. Southeastern Pennsylvania Transportation Authority,* 420 F.Supp. 1374 (E.D.Pa.1976), I considered a claim nearly identical to that made in this case. Nelson complained that he had been dismissed from SEPTA in violation of procedural and substantive due process guarantees. He contended that the termination of employment deprived him of a property interest, arguing that the provision in § 25(a) of the Metropolitan Transportation Authorities Act of 1963, 66 P.S. § 2025(a), stating that SEPTA employees can only be dismissed for "just cause" [5] established a property inter-

---

5. Section 25 provides:

"(a) The [SEPTA transportation] board shall classify all the offices, positions and grades of regular employment required, excepting that of the chairman of the board, the general manager, secretary, treasurer, chief counsel and other attorneys in the legal division, with reference to the duties thereof and the compensation fixed therefor and adopt rules governing appointments to any of such offices or positions on the basis of merit and efficiency. No discrimination shall be made in any appointment or promotion because of race, creed, color or political or religious affiliations. *No officer or employee shall be discharged or demoted except for just cause.*

(b) The board may abolish any office or reduce the force of employees for lack of work or lack of funds, but in so doing, the officer or employee with the shortest service record in the class and grade to which he belongs shall be first released from service and shall be reinstated in order of seniority, when additional force of employees is required. Seniority shall be considered a working condition. No qualified person shall be laid off if a transfer to another job, division or department within the transportation system can be arranged. "

(c) Pensions and Retirement. . . ."
(Emphasis added.)

est in employment under Pennsylvania law. Surveying Pennsylvania law on the property interest question, I noted that

> "The Pennsylvania legislature has given no indication as to whether it intended to create a property interest in employment under the Metropolitan Transportation Act, and I have not found any decision of the Pennsylvania courts which decides, or even comments on, the interest in continued employment created by § 2025(a).
>
> \* \* \* \* \* \*
>
> The absence of state interpretation, legislative or judicial, of that provision of the Act furnishes an unsteady foundation on which to predict how the Pennsylvania courts will ultimately resolve the 'property interest' issue."

420 F.Supp. at 1380, 1382.

Reference to other Pennsylvania employment statutes did not help to resolve the question:

> "I have found no Pennsylvania case . . which explicitly deals with whether Pennsylvania civil servants have a property interest in their job. *Cf. In re Geis,* 341 Pa. 413, 19 A.2d 368, 369 (1941)."

Id. *at 1380.*

The question was particularly complex because one of the defendants was Nelson's union, with which SEPTA had entered into a collective bargaining agreement. Any property interest under the Metropolitan Transportation Authorities Act might have been affected, therefore, by the terms of the collective bargaining agreement or by the Public Employe Relations Act, 43 P.S. §§ 1101.101 *et seq. Id.* at 1382. Since whether Nelson had a property interest in his job was an unsettled question of state law on which his federal constitutional challenge turned, I abstained from deciding the case under the doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Accord, Vasiloff v. Southeastern Pennsylvania Transportation Authority,* Civil No. 76–1349 (E.D.Pa., Nov. 24, 1976) (Gorbey, J.).

*Nelson* disposes of McKnight's claim that he has a property interest in his employment with SEPTA. I have considered his arguments to the contrary, but they do not convince me that I should depart from the position I took in *Nelson.*

■ McKnight contends that, as a matter of *federal* law, a clause prohibiting discharge from employment unless "just cause" is shown creates a property interest subject to due process protection. He relies on cases such as *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Jacobs v. Kunes,* 541 F.2d 222 (9th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); *Johnson v. Board of Regents,* 377 F.Supp. 227 (W.D. Wis.1974), *aff'd mem.,* 510 F.2d 975 (7th Cir. 1975); *Bolden v. Pennsylvania State Police,* 371 F.Supp. 1096 (E.D.Pa.1974); and *Monti v. Flaherty,* 351 F.Supp. 1136 (W.D.Pa. 1972), as well as the following language from *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972):

> "We have made clear in [*Board of Regents v. Roth,* 408 U.S. 564, 571–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)] that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' *Id.,* at 577, [92 S.Ct. at 2709.] A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. *Ibid.*
>
> A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown."

To me, however, the controlling case in this area is *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In that case, which dealt with a Marion, North Carolina ordinance providing that an employee could only be discharged for specific reasons, the Supreme Court stated:

"A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law. The North Carolina Supreme Court has held that an enforceable expectation of continued public employment in that State can exist only if the employer, by statute or contract, has actually granted some form of guarantee. *Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971). Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question."

426 U.S. at 344–45, 96 S.Ct. at 2077 (footnotes omitted).

*Bishop* establishes that whether there is a property interest in public employment depends on the law of the employer jurisdiction. Indeed, the majority specifically rejected a dissenter's "remarkably innovative suggestion that we develop a federal common law of property rights." *Id.* at 349 n.14, 96 S.Ct. at 2080. The cases cited by plaintiff are in accord with the principle established by the majority in *Bishop. Arnett* dealt with a federal employee and thus was based on federal court interpretation of a federal statute and regulations; it is no more relevant to the property interest question in this case than are the other cases cited by plaintiff from jurisdictions other than Pennsylvania. *See Bishop, supra,* 426 U.S. at 345 n.8, 96 S.Ct. 2074; *Nelson, supra,* 420 F.Supp. at 1380–81. Whether plaintiff has a property interest in his job must be determined in accordance with Pennsylvania law.

As to Pennsylvania law, plaintiff relies on *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960), and *Mahoney v. Philadelphia Housing Authority,* 13 Pa.Cmwlth. 243, 320 A.2d 459 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). In *Scott,* the Pennsylvania Supreme Court held that a public authority may not grant tenure in the absence of specific statutory authorization. It found that the statute there at issue, Parking Authority Law § 5(b)(7), 53 P.S. § 345(b)(7), only granted parking authorities the power "[t]o *appoint* officers, agents, employes and servants [emphasis added]" and concluded that such authorities thus had no power to enter into employment contracts through which tenure could be conferred. In the course of its discussion, the Court contrasted several other statutes—*e. g.,* the Civil Service Act, 71 P.S. §§ 741.1 *et seq.;* the tenure provisions of the Public School Code of 1949, 24 P.S. §§ 11–1121 to 11–1132; and §§ 12–15 of the Pennsylvania Board of Parole statute, 61 P.S. §§ 331.12–331.15—which specifically granted tenure as part of a comprehensive employment scheme. 402 Pa. at 155–56, 166 A.2d at 281–82. In *Mahoney,* the Commonwealth Court of Pennsylvania affirmed dismissal of an assumpsit action by a housing authority employee who contended that he was discharged by the authority in violation of his tenure rights. Following *Scott,* the Court surveyed the Housing Authorities Law, 35 P.S. §§ 1541 *et seq.,* and found that it "contains no legislative expression that housing authorities have the power to create tenure by contract." 13 Pa.Cmwlth. at 246, 320 A.2d at 460.[6] A grant of tenure by the authority would be ultra vires, and the plaintiff's dismissal without regard to tenure rights therefore was not wrongful. *See id.* at 245–46, 320 A.2d at 460. The Court went on to reject a contention that the plaintiff was discharged without procedural due process because, under *Scott,* the plaintiff had no property interest under Pennsylvania law. *Id.* at 246–48, 320 A.2d at 460–61.

Arguing from these adverse rulings, McKnight contends that § 25 of the Metropolitan Transportation Authorities Act is sufficiently similar to the tenure bestowing statutes noted in *Scott* to be interpreted as a grant of tenure to SEPTA employees. He argues further that since, under *Maho-*

---

**6.** In 1975, the General Assembly enacted a "supplement" to the Housing Authorities Law which extended civil service protection to em- ployees of such authorities. *See* 35 P.S. §§ 1566–1568.

*ney*, absence of tenure means that a plaintiff lacks a property interest, a grant of tenure must be sufficient to establish a property right under Pennsylvania law.

Plaintiff's argument is too simple. Focusing solely on the first half of that argument, I observe that the tenure bestowing statutes noted in *Scott*—as well as the statutes considered in the *Bolden* and *Monti* cases cited by plaintiff, *supra*—take various forms. While some use the term "just cause", they also contain a number of procedural provisions to protect an employee in the discharge process. It may be that the Pennsylvania courts will decide that the General Assembly, which, of course, is presumed to act with full knowledge of due process requirements, did not intend to create a property interest except in those instances in which it provided statutory procedural safeguards. It is interesting, for example, to compare § 25 of the Metropolitan Transportation Authorities Act, on which plaintiff relies, with § 17 of that same Act, 66 P.S. § 2017. While § 25 merely makes the broad statement that a SEPTA employee may not be discharged "except for just cause," § 17 specifies the reasons for which a member of SEPTA's governing transportation board may be removed and provides the member with a right to notice, hearing, and appeal.[7] It may be that both of these sections create a property interest or that neither of them do, but at this point I am not prepared to say that the difference between the two sections is without significance in deciding the question under Pennsylvania law. In short, even in light of *Scott* and *Mahoney*, Pennsylvania law on this subject is unclear.

Plaintiff makes a third argument that there was an "understanding" that he would have a continued expectation of employment with SEPTA and that this "understanding" gives rise to a property interest. In making this argument, plaintiff relies on the following excerpt from *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing *rules or understandings* that stem from an independent source such as state law—*rules or understandings* that secure certain benefits and that support claims of entitlement to those benefits." (Emphasis added.)

The *Roth* quotation makes clear that the "rules or understandings" which create a property interest must "stem from an independent source such as state law." The "understanding" to which plaintiff refers is nothing more than his interpretation of the Metropolitan Transportation Authorities Act and certain inferences which he seeks to draw from defendants' conduct in attempting to comply with the Act.[8] Neither

7. Section 25 is quoted in note 5, *supra*. Section 17 provides:

". . . The appointing power may remove any member of the board appointed by him or them, but only in case of incompetency, neglect of duty or malfeasance in office. No member shall be thus removed except after having been given a copy of the charges against him and an opportunity to be publicly heard, at a place in the metropolitan area, in person or by counsel, in his own defense upon not less than ten days' written notice. . . . A member removed for incompetency, neglect

of duty or malfeasance in office shall have the right to appeal such removal to the court of common pleas of the county for which he was appointed, but only on the ground of error of law or manifest and flagrant abuse of discretion."

8. Basically, McKnight argues that since defendants gave him a reason (though allegedly an unjustified reason) for the discharge, defendants understood the Act as bestowing a continued expectation of employment unless reasons

plaintiff's nor defendants' interpretation of the employment relationship controls on this issue, however. The state law from which this understanding must stem remains unclear, and the subjective notions or expectations of the parties cannot resolve such a legal question.

■ As I stated in *Nelson, supra,* 420 F.Supp. at 1380, the contention that SEPTA employees have a property interest in their job is not without merit. The problem is that there is also merit in defendants' contrary position. This is so even though resolution of the issue does not involve the collective bargaining agreement which was a complicating factor in *Nelson.* It is still my view that state law on this issue is sufficiently unclear to warrant abstention. *Cf. Frederick L. v. Thomas,* 557 F.2d 373, 383 (3d Cir. 1977). A state has an important interest in regulating its own employment practices free from outside interference. *See Bishop, supra,* 426 U.S. at 349–50 & n.14, 96 S.Ct. 2074. Abstention will allow the state's own courts to consider these employment practices in light of federal constitutional guarantees and possibly avert a need for federal court interference. This is one of the purposes abstention was intended to serve. *Frederick L., supra,* at 381.

■ Plaintiff contends that abstention is inappropriate because there is no adequate state law cause of action which will permit him to obtain an answer to the property interest question without also adjudicating his constitutional claim. *See generally* Field, Abstention in Constitutional Cases: The Scope of the *Pullman* Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1144–47 (1974). The abstention procedure outlined in *Eng-*

land v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), requires a federal plaintiff to submit to state courts[9] unsettled questions of state law in the context of the federal constitutional issue presented. While the plaintiff may, of course, allow the state courts to decide the federal constitutional issue, he may, if he so desires, reserve his right to return to federal court for ultimate resolution of the federal question. Although *England* is not entirely clear on the manner in which the plaintiff is to submit the case to the state courts, I see no reason why a plaintiff may not file the same civil rights action that he had brought in federal court rather than utilizing a separate cause of action under state law. Such a procedure would present the state law issue in exactly the same context as that faced by the federal court. State courts can hear federal civil rights actions. *Terry v. Kolski,* 78 Wis.2d 475, 254 N.W.2d 704 (1977); *Commonwealth ex rel. Saunders v. Creamer,* 464 Pa. 2, 4–5 n.3, 345 A.2d 702, 703–04 n.3 (1975); *see Jones v. Hildebrant,* 432 U.S. ——, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977). *Contra, Chamberlain v. Brown,* 223 Tenn. 25, 442 S.W.2d 248 (1969). *See also Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). Even if plaintiff may not proceed in that fashion, however, I do not agree with his contention that the Pennsylvania declaratory judgment procedure is so "cumbersome" that it will not provide adequate relief. In *Friestad v. Travelers Indemnity Co.,* 452 Pa. 417, 306 A.2d 295 (1973), the Pennsylvania Supreme Court abandoned the restrictive judicial rules which had been applied to the Uniform Declaratory Judgments Act and its supple-

for discharge were given. Plaintiff thus concludes that defendants shared his "understanding" that the Act created a property interest in his job. To me, the only conclusion that can be drawn from defendants' conduct is that they sought to comply with the "just cause" provision of the statute. That compliance has no bearing on the entirely separate question of whether the statute creates a property interest.

9. The preferred procedure is to certify the state issues to the supreme court of the state. *See,*

e. g., Bellotti v. Baird,* 428 U.S. 132, 150–51, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); *Lehman Bros. v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). Pennsylvania does not appear to have a certification procedure. *But cf.* Appellate Court Jurisdiction Act of 1970, § 205, 17 P.S. § 211.205 (extraordinary jurisdiction of Pennsylvania Supreme Court); 42 Pa.C.S.A. § 726 (same) (effective upon enactment of legislation repealing Act of July 9, 1976, P.L. 586, No. 142, § 29(4)); Pa.R.App.P. 3309 (same).

mentary provisions, 12 P.S. §§ 831–853, and adopted a policy favoring liberal construction of the statute. Recently, the General Assembly further liberalized the declaratory judgment procedure as part of its enactment of a new judicial code. See Declaratory Judgments Act, 42 Pa.C.S.A §§ 7531–7541 (especially §§ 7533, 7541) (effective upon enactment of legislation repealing Act of July 9, 1976, P.L. 586, No. 142, § 29(4)). I therefore reject plaintiff's contention that an adequate state law remedy is lacking.

I recognize that abstention may lead to some delay in resolving plaintiff's claims. See Frederick L., supra, 557 F.2d at 381–82. In my view, however, given the lack of state law clarity and the importance and sensitive nature of the state policies implicated in this case, the considerations of federalism underlying the Pullman abstention doctrine outweigh whatever inconvenience plaintiff may suffer. I therefore shall adhere to the decision in Nelson that whether a SEPTA employee has a property interest in his job is an unsettled question of state law which initially should be decided by the Pennsylvania courts.

## 2. Liberty

In Nelson, plaintiff's sole contention was that he had been deprived of a property interest without due process of law. As a result, the decision to abstain from deciding the property interest question necessarily disposed of the entire constitutional claim. In this case, however, plaintiff makes the alternate contention that, whether or not he had a property interest, the discharge from his employment for reasons which affected his reputation in the community deprived him of liberty without due process.

■ Unlike the property interest question, whether plaintiff has been deprived of "liberty" within the meaning of the Due Process Clause is a question of federal, not state, law. See, e. g., Bishop, supra; cf.

Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 838–847, 97 S.Ct. 2094, 2107–11, 53 L.Ed.2d 14 (1977). The Supreme Court has discussed the liberty interest in reputation in a series of recent cases. See Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); Bishop, supra, 426 U.S. 347–50, 96 S.Ct. 2074; Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Goss v. Lopez, 419 U.S. 565, 574–75, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Arnett, supra, 416 U.S. at 156–57, 94 S.Ct. 1633 (plurality opinion); Roth, supra, 408 U.S. at 572–75, 92 S.Ct. 2694. In Paul, supra, the Court held that reputation in and of itself is not a "liberty" interest. Nevertheless, Paul and the other cited cases have stated that when a person suffers injury to his reputation in the course of his discharge from public employment, a liberty interest is implicated. The theory apparently is that damage to reputation, which normally can be redressed in a state tort action, is not sufficiently important to be labelled "liberty," but that when that damage is inflicted by the government in the course of some other action detrimental to plaintiff, the "extent of harm worked by that act" (Paul, supra, 424 U.S. at 709, 96 S.Ct. at 1164) reaches a level of seriousness meriting due process protection. See id. at 701–10, 96 S.Ct. 1155.[10] The rule thus applies even though a plaintiff is discharged from employment which does not constitute "property" under state law. See Codd, supra, 429 U.S. at 627–28, 97 S.Ct. 882. To be actionable, the injury to reputation must result from a false accusation (Codd, supra) which has been made public (Bishop, supra, 426 U.S. at 348–49, 96 S.Ct. 2074).

■ Paragraph 14 of the complaint alleges that defendants "discharged Plaintiff . . . on the alleged grounds that he had been intoxicated while at work and that he had failed to perform his designated duties." In ¶ 15, McKnight avers that in a

10. This analysis appears to conflict with the rule that the liberty interest question must be determined according to the "nature" of the interest under consideration rather than by a weighing process directed to the extent of

"grievous loss" suffered by the plaintiff. See, e. g., Smith, supra, 431 U.S. at 840–841, 97 S.Ct. at 2108. The Supreme Court has not attempted to reconcile this apparent conflict.

later unemployment compensation proceeding "the stated reason for discharge was arbitrarily changed by Defendants"; he does not state what new reason was given. The complaint then states that "[t]he allegations made by SEPTA officials were untrue" (¶ 16) and "[a]s a result of Defendants' communication to others of SEPTA's discharge of Plaintiff and other unsubstantiated charges against Plaintiff, he has suffered loss of reputation in the community and loss of opportunity for other employment" (¶ 22). These allegations do not state a claim of deprivation of liberty through damage to reputation during discharge from employment.

The averment of falsity in ¶ 16 is somewhat ambiguous in that it could refer either to the "allegations" of intoxication and failure to perform duties set forth in ¶ 14 or to the unspecified new allegations made at the unemployment compensation proceeding and noted in ¶ 15. Similarly, the averment in ¶ 16 is unclear as to just what information was communicated "to others" and is much too vague in stating that the false accusations were made public. These defects could be cured by amendment. In my view, however, the fatal flaw in McKnight's liberty interest claim is that the accusation about which he complains is not sufficiently stigmatizing. As the Ninth Circuit stated in *Gray v. Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir. 1975):

> "Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character. *Jenkins v. U.S. Post Office*, 475 F.2d 1256, 1257 (9th Cir. 1973). But not every dismissal assumes a constitutional magnitude. The concern is only with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities."

*Cf.* Restatement (Second) of Torts § 559 (1977) (common law defamation).

In *Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707, the Supreme Court characterized actionable accusations as those "that might seriously damage [a plaintiff's] standing and associations in his community" and gave as examples charges of "dishonesty, or immorality." Surely the charge that McKnight "failed to perform his designated duties" on the job does not equate with the type of charge referred to in *Roth*. Failure to perform job-related tasks is a rather common occurrence, and, although it does not reflect positively on an individual, it is not the type of conduct which will subject him to such public scorn or ridicule that he will be unable to obtain other employment. As I read ¶ 14, the charge that plaintiff "had been intoxicated while at work" referred to an isolated incident and therefore also is not of a stigmatizing character. A charge of intoxication does not reflect "dishonesty," or "immorality" or any similar "serious character defects" (*Gray, supra*, at 806). Intoxication is not illegal. As defendants point out, there was no general charge of alcoholism, such as would seriously reflect on an individual's ability to perform adequately in an employment situation. At most, an isolated incident of intoxication reflects intemperance and unsatisfactory job performance, but in this respect it is no different from a charge of falling asleep on the job or failure to properly perform assigned tasks. Since the accusations against McKnight were not sufficiently stigmatizing, McKnight has failed to state a claim for deprivation of his liberty interest in reputation.

Insofar as this civil rights action is based on deprivation of plaintiff's liberty interest, the case will be dismissed for failure to state a claim.

### B. *Due Process of Law*

Since I have held that plaintiff's claims are subject to dismissal insofar as they are based on a liberty interest in reputation, this case now assumes the exact same posture as that in *Nelson, supra*. Plaintiff asserts that he was denied property—his job—without procedural or substantive due process of law. Whether plaintiff actually has a property interest in his job is an unclear question of state law. If the answer to that question is no, plaintiff has not

been deprived of a constitutional "life, liberty, or property" interest and the procedural and substantive protections of the Due Process Clause do not apply to the case. Since resolution of the state law property interest question might avoid the need for a federal constitutional ruling in this case, the *Pullman* abstention doctrine is directly applicable. *Nelson, supra; Vasiloff v. Southeastern Pennsylvania Transportation Authority*, Civil No. 76–1349 (E.D.Pa., Nov. 24, 1976); *Perry v. Sindermann*, 408 U.S. 593, 603–04, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (Burger, C. J., concurring); *see Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83–84, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *cf. Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 477, 480–481, 97 S.Ct. 1898, 1902–05, 52 L.Ed.2d 513 (1977).

That this analysis is correct with regard to the procedural due process claim is clear. The procedural protections which, under the Due Process Clause, must attend a deprivation of property or liberty by the government vary with each fact situation (*Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)), and the Supreme Court has prescribed a three-part factual analysis to determine what safeguards are required in a particular case (*see Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *accord, Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 848–849, 97 S.Ct. 2094, 2112, 53 L.Ed.2d 14 (1977); *Ingraham v. Wright*, 430 U.S. 651, 675, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). All of the cases hold, however, that this analysis does not come into play until it is first determined that plaintiff's life, liberty, or property has been deprived. *See, e. g., Smith, supra*, at 840–841, 97 S.Ct. 2094, quoting *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Ingraham, supra*, 430 U.S. at 672, 97 S.Ct. 1401.

I believe that the substantive due process claim rests on no different footing, but because of the peculiar nature of substantive due process, this conclusion requires more detailed discussion.

■ In recent times, the substantive due process doctrine has been one of the most controversial areas of federal constitutional law. Read literally, the Due Process Clause would only seem to apply to procedures resulting in deprivation of life, liberty, or property, but by judicial construction it is now firmly established that the clause has substantive content as well. *See Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). At its most basic level, the substantive due process doctrine proscribes interferences with life, liberty, or property "by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect." *Meyer v. Nebraska*, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923). Under this test, presumptively valid state legislation will not be struck down unless the aim it is to achieve is not within the range of legitimate state interests or it is not rationally related to the attainment of a legitimate end. *See, e. g., Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). When legislation infringes on liberty which is "fundamental," a more searching test is employed. The courts will then inquire into the importance—rather than merely the legitimacy—of the objective sought to be achieved, as well as the necessity of using interference with fundamental liberties as a means of reaching that end. *See, e. g., Bates v. State Bar of Arizona*, 433 U.S. ——, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (infringement of freedom of speech); *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (infringement of right to privacy); *Moore, supra* (plurality opinion) (infringement of freedom of choice in family matters); *Wiscon-*

*sin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (infringement of religious freedom).[11]

In this case, plaintiff does not directly attack any state legislation; he only challenges his own discharge under authority of § 25 of the Metropolitan Transportation Authorities Act. Plaintiff does not contend that he was denied any "fundamental liberty" as that term is used in substantive due process cases. Nor does he deny that SEPTA has a legitimate interest in maintaining a level of competency in its public employees or that discharge of an employee for the reasons given by defendants in this case—intoxication while at work and failure to perform designated duties—is rationally related to furtherance of that interest. Instead he contends that the reasons given for his discharge were false and without factual basis; he avers that despite the reasons given by defendants, the discharge actually was arbitrary, irrational, and capricious. Plaintiff argues that he has a right to be free from such arbitrary, irrational, and capricious governmental conduct and that that right is in itself a constitutional liberty interest independent of whatever property interest he may have in his job or liberty interest in his reputation. In effect, therefore, plaintiff argues that substantive due process is an independent liberty interest unto itself. *See generally* Comment, Substantive Due Process: The Extent of Public Employees' Protection from Arbitrary Dismissal, 122 U.Pa.L.Rev. 1647 (1974).

It is important to note the ramifications of plaintiff's substantive due process claim. Under plaintiff's view, apparently any person may obtain federal review of his discharge from public employment merely by asserting that the reasons given by the employer were false. This theory converts the federal courts into a state employment appeals board, supplanting the administrative and judicial mechanisms established by the states to review personnel decisions. Under such a view, the admonition of the Supreme Court in *Bishop, supra,* must be kept in mind:

> "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."

426 U.S. at 349–50, 96 S.Ct. at 2080 (footnote omitted), *quoted in Nelson, supra,* 420 F.Supp. at 1382.

■ I am in agreement with the Seventh, Eighth and Tenth Circuit Courts of Appeals that there is no separate, independent "liberty" interest in being free from arbitrary and capricious governmental action; at least in the context of public employment cases, the governmental conduct must deprive the plaintiff of some otherwise recognizable life, liberty, or property interest before the plaintiff can recover. *See Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1, 3–5 (7th Cir. 1974) (Stevens, J.); *Evans v. Page*, 516 F.2d 18, 21 (8th Cir. 1975); *Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196,

---

11. The justices of the Supreme Court have disagreed as to what liberties should be considered "fundamental." *See Moore, supra. Bates* and *Yoder* are examples of cases in which liberties protected from federal infringement under the Bill of Rights have been accorded similar protection from state infringement under the Due Process Clause. In such cases, the test employed under the Due Process Clause is usually identical to that employed under the Bill of Rights. *Carey* and *Moore* are examples of cases in which the Court has accorded heightened substantive protection to liberties not specifically mentioned elsewhere in the Constitution.

1200–03 (8th Cir. 1974); *Weathers v. West Yuma County School District R–J–1*, 530 F.2d 1335, 1340–42 (10th Cir. 1976). *But cf. Thompson v. Gallagher*, 489 F.2d 443, 446–47 (5th Cir. 1974); *Drown v. Portsmouth School District*, 451 F.2d 1106 (1st Cir. 1971). *See also Nelson, supra*, 420 F.Supp. at 1383. There are likely many situations in which the government is permitted to act in an arbitrary or capricious manner. I do not doubt, for example, that a state could enter into an employment relationship which is terminable at will, and, having done so, could as any other employer in such a situation, discharge its employee for any or no reason whatsoever. Surely the fact that the employer is a state would not enable the employee to obtain relief on a due process claim for arbitrary governmental action, since the possibility of arbitrary dismissal is inherent in the nature of employment terminable at will.[12] Whether the government has acted arbitrarily or irrationally in a given fact situation is the test to be applied to a substantive due process claim, but that question is entirely separate from the threshold issue whether plaintiff was deprived of life, liberty, or property as a result of the government's conduct.

Plaintiff relies on my opinion in *Stokes v. Lecce*, 384 F.Supp. 1039 (E.D.Pa.1974), to support his claim of an independent liberty interest, but the statements in that case do not conflict with rejection of his argument. *Stokes* was a civil rights action against the chairman of the Pennsylvania State Horse Racing Commission, who, according to the jury's findings, caused the Commission to withhold approval of Stokes for a job with certain horse racing associations. In denying Lecce's motion for a judgment n. o. v., I explained that Stokes' action was a denial of *procedural* due process due to Lecce's interference with normal Commission approval procedures. 384 F.Supp. at 1048–49. I also explained that Lecce's conduct interfered with Stokes' property right to employment with the association. *See id.* at 1047–48. The case affords no support to McKnight's theory in this case that there is an independent liberty interest in freedom from arbitrary governmental action.

McKnight's substantive due process argument therefore must be linked to his alleged property interest in employment or liberty interest in reputation. I have held that McKnight was not deprived of a liberty interest. As to the property interest, resolution of his substantive due process claim must await clarification of the state law issue by the state courts. I note that in this context the substantive due process claim appears to be a disguised duplicate of plaintiff's pendent state claim under the Metropolitan Transportation Authorities Act, under which plaintiff contends that there really was not "just cause" for his dismissal and the dismissal therefore violated § 25(a) of the Act. The fact that resolution of that state claim will probably avoid this constitutional issue is an additional reason to abstain from deciding this constitutional issue at this time.[13]

I shall abstain from deciding plaintiff's procedural and substantive due process claims. The only question remaining is what procedure to follow in disposing of this case. As plaintiff points out, the nor-

12. *See, e. g, Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977), a due process case involving dismissal of a New York City policeman, in which the Supreme Court stated that "[s]ince the District Court found that [the plaintiff] had no Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question" (footnote omitted).

13. *See Nelson, supra*, 420 F.Supp. at 1383–84: "To the extent that plaintiff's fifth count alleges that defendants' actions were arbitrary when judged against some standard established by the Metropolitan Transportation Authorities Act, 66 P.S. § 2001, et seq., . . . it is only appropriate that this claim be considered by the state court together with the other state court issues. To the extent that plaintiff's fifth count is based on a more abstract, 'constitutional,' standard—it is this apparent lack of standards that has been one reason for the questionable validity of the concept of substantive due process—this court should abstain from deciding this issue also so long as state court interpretation of state law may avoid that constitutional question."

828

mal procedure is to retain jurisdiction after an abstention order. *American Trial Lawyers Ass'n v. New Jersey Supreme Court*, 409 U.S. 467, 469, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973) (per curiam); *Zwickler v. Koota*, 389 U.S. 241, 244 n.4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Due to the lack of precedent in Pennsylvania, I am unsure whether the Pennsylvania courts will be receptive to plaintiff's case if I follow that course. Therefore, as in *Nelson, supra*, I shall instead dismiss the complaint without prejudice, in the hope that this will facilitate state court action on plaintiff's claim. *Cf. Harris County Commissioners Court, supra*, 420 U.S. at 88–89 & n.14, 95 S.Ct. 870; *American Trial Lawyers Ass'n, supra*.

III. *Pendent State Claims*

Plaintiff asserts state law claims against defendants for violation of § 25 of the Metropolitan Transportation Authorities Act and for breach of contract. In light of the decision to abstain from deciding the federal claims at this time and to defer to the state courts for initial resolution of underlying state law issues, I shall exercise my discretion not to exercise jurisdiction over the pendent claims. Plaintiff may litigate these claims as part of his case in the state courts. *See Nelson, supra*, 420 F.Supp. at 1384.

ADDENDUM

After the foregoing opinion was prepared and was about to be filed, plaintiff submitted his third memorandum of law in opposition to defendants' motion to dismiss. This unsolicited and unapproved submission was made long after oral argument and was not timely under the local rules of this court. *See* E.D.Pa.R.Civ.P. 36. Nevertheless, I have considered plaintiff's brief and dispose of his contentions in this addendum.

In the additional submission, plaintiff argues that aside from the liberty interest in reputation recognized by federal law, he also has been deprived of a broader liberty interest in reputation recognized by Pennsylvania law. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the

Supreme Court held that reputation in and of itself is not a federally recognized liberty interest unless it is injured in the course of discharge from public employment (424 U.S. at 701–10, 96 S.Ct. 1155), but the Court also noted that, apart from federally recognized liberty interests, certain interests may attain protected status by virtue of state law, and that once such "liberties" are recognized by a state, they cannot be deprived by that state without due process (*see id.* at 710–12, 96 S.Ct. 1155). Since Kentucky, the state involved in *Paul*, did not recognize reputation as a constitutional liberty interest under state law, the Due Process Clause did not apply to a deprivation of plaintiff's good reputation by Kentucky's municipal officers. *Id.* at 711–12, 96 S.Ct. 1155. Plaintiff points out that, unlike Kentucky, Pennsylvania does recognize reputation as a constitutional liberty interest. The Pennsylvania Constitution declares:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and *reputation*, and of pursuing their own happiness."

Pa.Const., Art. 1, § 1 (emphasis added). *See also id.* § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have a remedy by due course of law . . .").

The Pennsylvania Supreme Court has stated that under these provisions, "protection of one's reputation is a fundamental right classified with life, liberty and property." *Moyer v. Phillips*, 462 Pa. 395, 400, 341 A.2d 441, 443 (1975).

Reputation was first granted state constitutional status in the Constitution of 1790, Art. 9, § 1, but few decisions have discussed the right since that time. *See generally Moyer, supra; Matson v. Margiotti*, 371 Pa. 188, 202–05, 88 A.2d 892, 899–900 (1952); *Meas v. Johnson*, 185 Pa. 12, 19, 39 A. 562, 563 (1898); *Commonwealth v. Swallow*, 8 Pa.Super. 539 (1898). In some of those decisions, the Pennsylvania courts have

shown a willingness to balance the right against conflicting state interests. *See, e. g., Matson, supra; Swallow, supra; cf. Redding v. Carlton*, 223 Pa.Super. 136, 139, 296 A.2d 880, 881 (1972). The degree of substantive protection which the right must be afforded is not entirely clear. So far as I am aware, the only decision which has discussed the right to reputation in a due process context is Judge Spaeth's opinion in *In re Sharpe*, —— Pa.Super. ——, ——, 374 A.2d 1323, 1330–31 (1977) (Spaeth, J., concurring in part and dissenting in part), in which he concluded that "at least under state law, a person's reputation may not be damaged by acts of the government except by due process of law."

██ McKnight's argument based on a reputation interest under state law does not aid his civil rights claim. I have held that defendants' charge of an isolated incident of intoxication while on the job is not sufficiently stigmatizing to implicate the liberty interest in reputation during discharge from employment because it will not impair plaintiff's ability to take advantage of other employment opportunities. I will assume that that charge does implicate plaintiff's more general interest in reputation under Pennsylvania law. *See generally* Restatement (Second) of Torts § 559 (1977) (definition of defamation at common law). Aside from the question whether defendants' statements were defamatory, however, I do not believe that the circumstances in which the alleged defamation occurred raise this fact situation to constitutional dimensions.

██ In *Jones v. McElroy*, 429 F.Supp. 848, 861–63 (E.D.Pa.1977), I noted that there is a distinction between common law tort claims and actions for deprivation of constitutional rights. While the former may be based on negligence or even strict liability, the latter seem to require a greater degree of culpability—intent. *See, e. g., Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (equal protection cases); *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (due process claims based on freedom from

cruel and unusual punishment resulting from inadequate medical care). The cases are not clear as to whether this is a general distinction between all tort and civil rights cases (thus making only intentional deprivation of constitutional rights actionable) or whether the standard of culpability in civil rights cases turns on the peculiar nature of the constitutional right involved in each case. *See, e. g., Santiago v. City of Philadelphia*, 435 F.Supp. 136, 150–51 (E.D.Pa. 1977); *Culp v. Devlin*, 437 F.Supp. 20, 22–23 (E.D.Pa.1977). *Jones* was a police brutality case, *i. e.*, an action for deprivation of the right to personal security (*see Ingraham v. Wright*, 430 U.S. 651, 672–74, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)) without due process of law. The instant case involves deprivation of reputation without due process. A tort action for damage to reputation may be based on negligence. *See* 12 P.S. § 1583; 42 Pa.C.S.A. § 8344 (effective upon enactment of legislation repealing Act of July 9, 1976, P.L. 586, No. 142, § 29(4)); Restatement (Second) of Torts § 580B (1977). *See also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347–48 & n. 10, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The availability of such an action ameliorates any need to recognize a civil rights action for negligent deprivation of reputation. That fact, coupled with the Supreme Court's strong pronouncements in *Paul v. Davis* opposing conversion of defamation actions into constitutional claims (*see* 424 U.S. at 699–710, 96 S.Ct. 1155), leads me to conclude that, where reputation is recognized as a liberty interest by state law, a civil rights action for deprivation of that interest without due process will only lie if the defamation was intentionally committed. *Cf. Paul, supra*, at 717, 96 S.Ct. 1155 (Brennan, J., dissenting) (recognizing possible distinction between negligent and intentional impairment of reputation by state officials). If that were not the case, every common law defamation action against state officials could be brought in federal court on a substantive due process theory. I believe that this distinction between negligent and intentional conduct conforms more precisely to the true nature of civil

rights actions as a means of redressing government officials' "abuse of [their] position" (*Monroe v. Pape*, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *see Paul, supra,* 424 U.S. at 717, 96 S.Ct. 1155 (Brennan, J., dissenting)).

 Paragraph 16 of the complaint merely states that plaintiff's reputation was harmed "[a]s a result of Defendants' communication to others." Plaintiff does not assert that the defendants deliberately acted to defame him. When questioned at oral argument, plaintiff's counsel was unable to provide any details about the alleged "communication to others," and it appears that no further information could be provided through amendment of the complaint. Civil rights actions must be pleaded with a degree of specificity sufficient to assure the court that there is a factual basis for the plaintiff's claims. *See Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922–23 (3d Cir. 1976); *Gray v. Creamer,* 465 F.2d 179, 182 n.2 (3d Cir. 1972); *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 973 (E.D.Pa. 1977); *Jones, supra,* at 863. On the basis of the allegations in the complaint, I must conclude that plaintiff's claim of injury to reputation is based on nothing more than alleged negligent acts of defendants. Since plaintiff has not alleged that the defendants acted with the intent to defame him, I hold that he has failed to state a claim insofar as his civil rights action is based on the liberty interest in reputation recognized by state law.